UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23795-Civ-HUCK
MAGISTRATE JUDGE P.A. WHITE

NORWIN GUZMAN,                    :

    Petitioner,              :

v.                                :          REPORT OF
                                             MAGISTRATE JUDGE
WALTER A. McNEIL,                 :

    Respondent.              :
_____

## I. Introduction

Norwin Guzman, who is presently confined at Santa Rosa Correctional Institution in Milton, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in case number 01-4056, entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the amended petition for writ of habeas corpus, the Respondent's response to an order to show cause with appendix of exhibits, and the reply to the response, and the supplemental response of the Respondent with additional exhibits.

## II. Procedural History

On March 1, 2001, Guzman was charged in a multi-count information with armed robbery, car jacking, attempted second

degree murder of a law enforcement officer, armed kidnaping of a law enforcement officer, escape, depriving an officer of means of protection and unlawful use of a driver's license. (DE# 25, Ex. A-1).

Prior to trial Guzman moved to suppress his confession and other evidence. (DE# 48-1, p. 49-50). A hearing was held on the motion. (DE# 48-3, 48-4). At the beginning of the hearing there was discussion regarding a tape of one of Guzman's statements. (DE# 48-3, p. 6-21). At one point Guzman's counsel notes that the tape is actually helpful to the defense. (DE# 48-3, p. 18).

The officers who received Guzman's statement testified that he was very excitable and wanted to talk while he was still being transported to a police station. Because he was constantly talking one of the officers verbally advised Guzman of his Miranda rights. Guzman continued talking. He was again advised of his Miranda rights in writing. Defense counsel pointed out a deposition of Florida Highway Trooper who was present for a portion of the time that Guzman was in the car with the two officers. In his deposition the trooper said that he did not hear the Miranda warnings and that the two officers were questioning Guzman. The trial court advised the parties that he would read the deposition.

At the conclusion of the hearing defense counsel was equivocal as to whether the taped statement might be used by the defense, but nevertheless asked for suppression. Defense counsel also noted that the tape would be useful to impeach the credibility of the two officers who took the statements from Guzman. (DE# 48-4, p. 88). The trial court denied the motion to suppress, finding the confession was voluntary. Although the unrecorded confession was not suppressed, the court found that a portion of tape recorded

2

statement would be suppressed after the point where Guzman mentioned an attorney. (DE# 48-4, p. 90).

At trial the State presented the testimony of the victim Trooper Dana Hulnick. (DE# 48-12, p. 18-125, DE# 48-13, p. 3-27). Trooper Hulnick testified that she was on patrol on the night of February 5, 2001 when she stopped Guzman for speeding. Guzman produced an Florida identification card in the name of Peter Adorno and told Trooper Hulnick that his license was suspended. Trooper Hulnick determined that there were bench warrants for Peter Adorno and arrested Guzman and handcuffed him behind his back. She waited for a tow truck to take Guzman's vehicle and as she waited Guzman asked her to loosen the handcuffs. When the tow truck arrived she inspected the handcuffs and loosened them a bit. She then transported Guzman to the Miami-Dade Police Headquarters to get a copy of the warrants. At the station she permitted Guzman to use the restroom. He told Trooper Hulnick that the handcuffs would not be a problem in the restroom.

After leaving the station Trooper Hulnick was en route to the county jail. When she was about a mile from the jail Guzman told her that he thought we was going to be sick. Trooper Hulnick pulled to the side of the road and rolled down a window so Guzman could put his head outside the window. She would not let him out of the car. She looked away because she did not want to watch him get sick. When she was not looking Guzman struck her on the side of the face. Guzman then started choking her and going for her gun. The two ended up outside the vehicle as the struggle continued. Guzman was atop Trooper Hulnick continuing to choke her and threatening to kill her. He continued to try to get her gun. Guzman slammed her head repeatedly into the pavement. Guzman bit Trooper Hulnick as he continued struggling for her gun. Eventually, Guzman obtained her

3

pepper spray and sprayed her. At this point Trooper Hulnick was unable to resist and Guzman took her gun. Guzman forced her into the car at gunpoint and he got in the driver's seat. He was unable to get the car in gear and forced Trooper Hulnick to get make the car operable. After the car started moving Trooper Hulnick got out and Guzman got in the driver's seat while holding her. She saw a car approaching and broke free. Guzman drove off.

Trooper Hulnick was able to flag down a passing vehicle whose driver took her to a place where she could call her dispatcher. She reported what had happened. Meanwhile the person who picked her up called 911 for the local police.

The State presented the testimony of a police officer who was present to take a statement from Guzman. (DE# 48-10, p. 145). Detective Robert Firman was brought in because he was a Broward County police officer who knew Guzman. He was present when Guzman was arrested. When Guzman saw Detective Firman he asked the detective to help him. Guzman was very excited and Detective Firman told him to calm down. Guzman wanted to talk, but Detective Firman told him to wait until they arrived at the police station. Guzman continued talking so Detective Firman and the other officer decided to provide Miranda warnings. The other officer was able to go through the warnings. Guzman seemed agitated to have to listen to them. After having been given the warnings Guzman continued speaking to the detectives.

At the station Guzman provided a detailed statement where he acknowledged being arrested by Trooper Hulnick. He explained that he convinced her to loosen the hand cuffs and got his hand free. He admitted that he was planning to escape because he did not want to go to jail. On the way to jail he told Trooper Hulnick that he was

feeling sick so she would pull over. Once the car was stopped and Trooper Hulnick had the door open he attacked her. He gave a convoluted story in which the details changed, but the gist remained the same. Essentially he told the detectives that he punched Trooper Hulnick and she was also hit with the hand cuff. He then started choking her and pushed her out of the car. Once out of the car Guzman was atop Trooper Hulnick trying to get her gun and hitting her. He got the trooper's pepper spray and used it against her at which point he was able to get her gun. He attempted to take Trooper Hulnick's vehicle but unable to put it in gear. He made Trooper Hulnick operate the car and then took the car and fled.

The State also presented the testimony of Detective Marcy Stone, the other police officer who took Guzman's statement. She testified that Guzman was taken into custody at a hotel where he was staying. He was given a blanket and put in the back of a police car. Detective Stone and Detective Furman sat with Guzman in the car. Guzman began talking about the incident with Trooper Hulnick. In an abundance of caution, Detective Stone advised him of his Miranda rights because he was talking so much. Detective Stone let Guzman talk. Guzman said he did it, that he had messed up.

At the station Guzman gave the detectives a detailed statement. Detective Stone's version of the statement was in material respects consistent with the testimony of Detective Firman.

Both detectives were extensively cross examined about the statement they took from Guzman. As part of the cross examination defense counsel inquired about the taped statement that was taken and asked about the whispering that was discernible on the tape.

Guzman testified in his own defense. He acknowledged being stopped for speeding and providing a false identification to the trooper. He acknowledged that after he was placed in handcuffs he asked the trooper to loosen them. He testified that when he was taken to the station he went to the bathroom and vomited a bit. He testified that on the drive to the jail he was feeling nauseous and told the trooper. The trooper got angry with him but stopped the car and let him out. She moved the handcuffs in front and gave him a napkin. He then said that she removed one hand from the handcuffs and answered a phone call. He testified that when he was unable to vomit she became angry because she did not want him to get sick in her car. Then she started yelling and sprayed him with mace. He testified that he then got up and tackled the trooper to the ground. He claimed that while on the ground the trooper continued trying to spray the mace. He also claimed that the trooper tried to get her gun out the holster. He claimed he was afraid she would kill him so he bit her and grabbed her gun. He acknowledged that he took the trooper's gun and radio and threw them in the car and then got in the car and drove away. He claimed that he did not turn himself in because he did not think that anyone would believe him.

Guzman denied that he gave the statement that the detectives testified about. He testified that he lied in the taped statement. He claimed that the detectives had promised to help him out if he gave a story like the one on the tape.

The jury found Guzman guilty of robbery with at firearm, carjacking with a firearm, two counts of battery as lesser included of the kidnaping and armed battery charges, escape, depriving an officer of the means of protection, and unlawful possession of driver's license. On September 10, 2003, the court adjudicated Guzman guilty as found by the jury. (DE# 25, Ex. A-2). He was

sentenced on October 24, 2003. (DE# 25, A-3).  Guzman appealed his
conviction and sentence. (DE# 25, Ex. A).

On appeal Guzman raised three issues. (DE# 25, Ex. A).  He
argued that: (1) The trial court erred in denying a cause challenge
against a juror; (2) the trial court erred in overruling a hearsay
objection; and (3) the trial court erred in denying a defense
request to permit presentation of expert testimony. (DE# 25, Ex.
A).  The Third District Court of Appeal affirmed the conviction and
sentence. Guzman v. State, 934 So. 2d 11 (Fla. 3d DCA 2006). The
Third District denied rehearing and on December 6, 2006 the Florida
Supreme Court declined to review. Guzman v. State, 945 So.2d 1290
(Fla. 2006)(Table, NO. SC06-1713).

On December 5, 2007, Guzman filed a motion for post conviction
relief pursuant to Florida Rule of Criminal Procedure 3.850. (DE#
25, Ex. D).  In this motion he raised two issues. He argued that
trial counsel was ineffective for failing to file a written motion
for mistrial and that the trial court imposed a vindictive
sentence. Guzman filed a supplemental motion for post conviction
relief on February 11, 2008 in which he raised a total of thirteen
claims. (DE# 47-1, p. 8-53). The first two claims were identical to
those raised in the initial motion. Claims 3, 4, 5, 6 and 12 were
ineffective assistance of counsel claims. Claims 7, 8, 9, 10 and 11
were claims addressed to trial court errors or bias.   The motion
was denied by the State trial court on June 6, 2008. (DE# 25, Ex.
F).  The trial court ruled that all claims raised in the motion
were procedurally barred as they could have or should have been
raised on direct appeal. The trial court alternatively found that
claim one was speculative and that the claim of vindictive
sentencing was refuted by the record. On July 14, 2008, the trial
court denied Guzman's motion for rehearing and advised him of his

right to appeal. (DE# 25, Ex. G).  Guzman appealed the denial of his motion for post conviction relief.  There is no evidence that a brief was ever filed in the appeal. The Third District affirmed the denial of the motion. <u>Guzman v. State</u>, 995 So. 2d 503 (Fla. 3d DCA 2008)(Table).  On December 2, 2008, the Third District issued the mandate on its decision. (DE# 25, Ex. I).

Prior to the issuance of the mandate Guzman had filed a motion for extension of time to file a motion for rehearing. (DE# 29, p. 10).  That motion was granted by the Third District, allowing Guzman until November 22, 2008 to file a motion for rehearing. (DE# 29, p. 12).  Guzman's petition includes exhibits indicating that he submitted a motion for rehearing prior to the date established by the Third Disrict. (DE# 29, p. 13).  On July 9, 2009, seven and a half months later, Guzman filed a motion to rule and hear. (DE# 29, p. 15).  As a part of this motion Guzman included two inquiries he sent to the clerk of the Third District. (DE# 29, p. 18-19).  On July 27, 2009, the Third District directed Guzman to re-file his November 19, 2008 motion.  On August 20, 2009, Guzman filed a new motion for rehearing. (DE# 29, p. 20-21).  On October 8, 2009 the motion for rehearing was denied. (DE# 29, p. 23).

In the interim, Guzman had filed a petition for habeas corpus with the Third District on February 20, 2009. (DE# 25, Ex. J).  In this petition Guzman raised eight claims. (DE# 25, Ex. J). He argued that (1) the totality of the grounds raised established a denial of due process; (2)the assistant state attorney who prosecuted his case was not a duly sworn assistant statewide prosecutor; (3) that the court should review his initial appeal; (4) appellate counsel was ineffective for failing to raise a claim of ineffective assistance of counsel as a fundamental error on direct appeal; (5) the trial court erred in denying his claim of

8

vindictive sentencing; (6) that trial counsel was ineffective for allowing a taped statement to be admitted after it had been suppressed;(7) trial counsel was ineffective for not calling a police officer as a witness to impeach the testimony of other police officers; and (8) the trial court and appellate court had erred in procedurally barring certain claims of fundamental error and ineffective assistance of counsel. On March 12, 2009 the petition was denied without written opinion. Mandate issued on April 3, 2009.

Guzman filed the instant petition on December 17, 2009.[1] In his petition he raises twenty claims. (DE# 8).

### III. Statute of Limitations

A one-year statute of limitations applies to petitions for writ of habeas corpus filed by State prisoners. 28 U.S.C. § 2244(d)(1). In most cases, the limitations period begins to run when the judgment becomes final after direct appeal or at the time when seeking such review has expired. 28 U.S.C. § 2244(d)(1)(A). This period is tolled while a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending. 28 U.S.C. § 2244(d)(2). Moreover, the one-year limitations period is also subject to equitable tolling in "rare and exceptional cases." See Lawrence v. Florida, 549 U.S. 327 (2007); Helton v. Sec'y, Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001) ("Equitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."). For

---

[1] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

equitable tolling to apply, a petitioner has the burden of proving:
"(1) that he ha[d] been pursuing his rights diligently, and (2)
that some extraordinary circumstances stood in his way and
prevented timely filing." Lawrence, 549 U.S. at 336 (citation
omitted).

After initially contesting the timeliness of the instant
petition, the State in its supplemental response has conceded that
the petition is timely.

### IV. Exhaustion and Procedural Default

An applicant's federal writ of habeas corpus will not be
granted unless the applicant exhausted his state court remedies. 28
U.S.C. § 2254(b), (c). A claim must be presented to the highest
court of the state to satisfy the exhaustion requirement.
O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v.
Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle,
677 F.2d 427, 443 (5th Cir. 1982). In a Florida non-capital case,
this means the applicant must have presented his claims in a
district court of appeal. Upshaw v. Singletary, 70 F.3d 576, 579
(11th Cir. 1995). The claims must be presented in State court in
a procedurally correct manner. Id. Moreover, the habeas applicant
must have presented the State courts with the same federal
constitutional claim that is being asserted in the habeas petition.
"It is not sufficient merely that the federal habeas petitioner has
been through the state courts ... nor is it sufficient that all the
facts necessary to support the claim were before the state courts
or that a somewhat similar state-law claim was made." Kelley v.
Sec'y, Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004) (citing
Picard v. Connor, 404 U.S. 270, 275-76 (1971); Anderson v. Harless,
459 U.S. 4, 6 (1982)).

10

Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

Procedural default arises when "the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred." Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). A claim is procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar. Coleman v. Thompson, 501 U.S. 722, 734-35 and n. 1 (1991). The state court's basis for rejecting the claim must be firmly established and regularly followed, and not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

In the interest of clarity the exhaustion and procedural bars to certain claims will be addressed below in the discussion section of this report.


## V. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28

11

U.S.C. § 2254(d)(1), (2); <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams</u>, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Hall v. Head</u>, 310 F.3d 683, 690 (11th Cir. 2002) (citing <u>Williams</u>, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Sec'y, Dep't of Corr.</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. <u>Id.</u> Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).

A number of Guzman's claims argue that counsel was ineffective. The United States Supreme Court clearly established

the law governing such claims in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Strickland</u> requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. <u>Id.</u> at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. <u>Id.</u> The judiciary's scrutiny of counsel's performance is highly deferential. <u>Id.</u> at 689. There is a "strong presumption" that counsel's strategy and tactics fall "within the range of reasonable professional assistance," and courts should avoid second-guessing counsel's performance with the use of hindsight. <u>Id.</u>

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. <u>Id.</u>

A defendant must satisfy both the deficiency and prejudice prongs set forth in <u>Strickland</u> to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. <u>Strickland</u>, 466 U.S. at 697.

Combining AEDPA's habeas standard and <u>Strickland's</u> two-pronged test provides the relevant inquiry for the ineffective assistance of counsel claims. To obtain habeas relief, Guzman must show the state court "applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).

13

## VI. Discussion

Due the extensive number of claims, as well as the differing procedural posture in which these claims have come to the court in the instant petition the undersigned will address the claims in numerical order. The discussion of each claim will address the exhaustion requirement and procedural bars unless such is not at issue. The undersigned will only address the merits of those claims found to have been exhausted and not procedurally barred.

## Claim 1 - Ineffective Assistance of Counsel- Motion for Mistrial

In claim one, Guzman claims that counsel was ineffective for failing to file a motion for mistrial as directed by the court. This claim was exhausted in that it was raised in a post conviction motion in State court and appealed. The claim as reflected in the instant petition is not well developed, however since this claim was raised in State court in Guzman's motion for post conviction relief, it is to the argument's raised in that motion that the court has looked in reviewing this claim. Guzman claimed that trial counsel moved for mistrial sixteen times and all were denied. He points to one instance wherein the trial court stated that counsel could file a written motion. He concludes that had counsel filed a facially sufficient motion for mistrial the outcome would have been different.

This claim was denied by the State court on both the merits and on procedural grounds. The State court found that this claim could have and should have been raised on direct appeal and was thus procedurally barred. The State court alternatively found that the claim was speculative.

14

Notwithstanding the procedural bar,[2] the trial court was correct to find this claim to be speculative. Each of counsel's motions for mistrial were denied by the trial court at the time they were raised. There is nothing in the record to indicate that the trial court would have reversed any of these rulings. Guzman merely states that had counsel filed a facially sufficient motion the outcome would have been different, however he does not provide any guidance regarding what additional arguments such a motion could have presented. Since this claim is speculative and the allegations conclusory it is insufficient to support relief. The State court's determination was not in contravention to controlling law and its factual determinations were not clearly erroneous.

Claim 2 - Trial Court Error - Vindictive Sentencing

In claim two, Guzman claims that his right to due process was violated by the imposition of an increased sentence after unsuccessful plea negotiations. Guzman claims that the trial court was involved in plea negotiations and later imposed a sentence that exceeded the State's offer.

This claim was properly denied by the State court on independent and adequate state ground of procedural bar. The State court found that this claim could have and should have been raised on direct appeal and was thus procedurally barred. This procedural bar was proper under Florida law. See Smith v. State, 909 So.2d 972, 973 (Fla. 2nd DCA 2005)(claim of vindictive sentencing properly barred in post conviction proceeding as claim could have been raised on direct appeal). As this claim was barred on State

_____

[2]Claims of ineffective assistance of counsel are generally not to be raised on direct appeal in Florida, a motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 is the preferred vehicle for such claims. Mendoza v. State, 941 So.2d 523 (Fla. 3d DCA 2006). Thus the undersigned does not recognize the procedural bar imposed by the State court on the claims of ineffective assistance of counsel raised in the 3.850 motion.

procedural grounds it is also barred from review in the instant petition.

## Claim 3 - Ineffective Assistance of Counsel - Failure to Move for New Trial Based on Alleged Inconsistent Rulings

In claim three, Guzman claims that counsel was ineffective for failing to file a motion for new trial. He claims that due to allegedly inconsistent rulings an air of confusion was created.

This claim was raised in the supplemental motion for post conviction relief. The trial court summarily denied this claim. The trial court's denial of this claim was proper. Guzman has failed to provide any discernible basis for filing a motion for new trial. He generally alleges that he was prejudiced by an "air of confusion". His claim is utterly speculative and is not sufficient to establish either deficient performance or prejudice due to ineffective assistance of counsel.

## Claim 4 - Ineffective Assistance of Counsel - Failure to Object to Questions of Prosecutor

In claim four, Guzman claims that counsel was ineffective for failing to object to the prosecutor's allegedly inappropriate questions on redirect that had already been asked on direct. He claims that these questions amount to fundamental error.

This claim was raised in the supplemental motion for post conviction relief and summarily denied. The summary denial of this claim was appropriate. Guzman fails to explain which questions of the prosecutor were inappropriate or how they prejudiced him. This claim is facially insufficient to establish either deficient performance or prejudice as required under Strickland.

16

<u>Claim 5 - Ineffective Assistance of Counsel - Failure to Move for
New Trial Based on Alleged Jury Bias</u>

In claim five, Guzman claims that counsel was ineffective for
failing to move for new trial based on alleged jury bias due to the
length of trial. He argues that the fact that one juror asked when
the trial would end was evidence that the jury was biased against
him and just wanted to get the trial over with.

This claim was raised in the motion for post conviction relief
and was summarily denied. The summary denial of this claim was
appropriate. This claim is nothing more than mere speculation on
the part of Guzman. One comment by one juror asking when the trial
would end shows absolutely no bias on the part of the jury. There
is simply no basis for counsel to have moved for a new trial based
on this one exchange. Guzman has failed to establish either
deficient performance or prejudice.

<u>Claim 6 - Ineffective Assistance of Counsel - Allowing Audio Tape
of Statement into Evidence After Successful Suppression</u>

In claim six, Guzman claims that counsel was ineffective for
admitting the audio tape of his statement into evidence despite the
order granting suppression. He argues that the admission of the
entire taped statement was prejudicial and that the prejudice
outweighed any impeachment value. He claims that as a result he was
forced to testify in his own defense.

This claim was raised in the motion for post conviction relief
and summarily denied. This claim was properly denied by the State
court. Although Guzman is correct that the tape was suppressed, he
fails to acknowledge that his prior unrecorded statements to the
police were not suppressed. His confession had been previously
admitted through the testimony of the detective who interviewed him

17

prior to taking the taped statement. The actual tape was merely cumulative. Additionally, defense counsel utilized the tape, and the claimed whispering, to attack the confession. This tactical decision was appropriate, although ultimately not successful. The performance of counsel is not to be viewed through the advantage of hindsight. At the time counsel decided to use the tape it was a legitimate trial strategy. Additionally, counsel argued strenuously that the entire tape not be played, but evidently decided that Guzman was better served by the strategy of attacking the prior statements by pointing out the alleged coaching on the tape. Guzman has failed to establish that counsel's performance was deficient and thus fails to meet the first prong of the Strickland test for ineffective assistance of counsel.

Claim 7 - Trial Court Error - Failing to Allow Defense to Lay
Foundation for Impeachment through Written Report

In claim seven, Guzman claims that the trial court erred in not allowing counsel to lay a foundation to impeach one of the police officers with a report prepared by another officer. He argues that had the jury heard the information in the report the outcome would have been different.

This claim was raised in the motion for post conviction relief. The trial court summarily denied this claim. This claim was properly denied in that it was procedurally barred from being presented on post conviction review under Florida law. See Hodges v. State, 885 So.2d 338, 366 (Fla.2004) (holding that claims of trial court error should be raised on direct appeal, not in a rule 3.850 motion); Gorham v. State, 521 So.2d 1067, 1070 (Fla.1988) (holding that any claim of error regarding jury instructions given by the court should have been raised on direct appeal, and was not cognizable in rule 3.850 motion). Since this claim of trial error

was preserved by counsel it should have been raised on direct appeal and was procedurally barred from post conviction review. Since this claim was barred on independent state grounds it is procedurally defaulted from being raised in this petition.

## Claim 8 -Trial Court Error - Failing to Rule on Motion for Mistrial Based on Relevance to the Charges of a Sock with Money

In claim eight, Guzman claims that the trial court erred in not ruling on a motion for mistrial that was raised by counsel based on the admission of certain evidence of a sock containing money that was found in his hotel room. He claims that this failure to rule denied him due process. Guzman acknowledges that the trial court ultimately denied the motion for mistrial on this issue.

This claim was raised in the motion for post conviction relief and summarily denied. Just as with claim seven, this claim is procedurally defaulted because Guzman failed to raise it properly in State court. Issues which could have and should have been raised on direct appeal are barred under Florida law. See supra, Hodges and Gorham. Having been procedurally barred in State court, this claim is procedurally defaulted.

## Claim 9 - Trial Court Error - Not Permitting Impeachment of Victim with Police Report of Investigating Officer

In claim nine, Guzman claims that the trial court erred in not allowing counsel to impeach the victim with a police report that included her statements. He claims that this is fundamental reversible error. Again this claim was raised in the motion for post conviction relief and was summarily denied. Denial of this claim was proper as it was procedurally barred. Issues which could have and should have been raised on direct appeal are barred under Florida law. See supra, Hodges and Gorham. Having been procedurally

barred in State court, this claim is procedurally defaulted.

<u>Claim 10 - Trial Court Error - Allowing Prosecution to Elicit from</u>
<u>Guzman Testimony as to the Credibility of Other Witnesses</u>

In claim ten, Guzman argues that the trial court erred in allowing the prosecutor to question him about whether he believed the police officers were lying. He claims that this was fundamental error.

This claim was raised in the motion for post conviction relief and summarily denied. This summary denial was proper, just as it was for claims seven, eight and nine above. Quite simply this is another claim that could have and should have been raised on direct review. Failure to raise the claim on direct appeal procedurally barred the claim from being raised on collateral review. <u>See</u> <u>supra</u>, <u>Hodges</u> and <u>Gorham</u>. Having been procedurally barred in State court, this claim is procedurally defaulted.

<u>Claim 11 - Trial Court Error - Bias was Allegedly Evident in Trial</u>
<u>Judge's Facial Expressions and Tone of Voice</u>

In claim eleven, Guzman argues that the trial court's facial expressions and intonations evidenced bias. He claims that he was thereby denied his right to a fair and impartial judge. In support of this claim he cites to one brief passage in a trial transcript that spans nearly 2000 pages.

This claim was raised in a motion for post conviction relief and summarily denied. This claim was properly denied as it was procedurally barred due to Guzman's failure to move to recuse the judge at trial. <u>See</u> <u>Asay v. State</u>, 769 So.2d 974, 979 (Fla.2000); <u>Rivera v. State</u>, 717 So.2d 477, 481 n. 3 (Fla.1998); <u>Stano v.</u> <u>State</u>, 520 So.2d 278, 281 (Fla.1988); <u>Zeigler v. State</u>, 452 So.2d

537, 539 (Fla.1984); <u>see also</u> § 38.02, Fla. Stat.(motions to disqualify must be filed within thirty days after the party learns of grounds for disqualification); Fla. R. Jud. Admin. 2.330(e)("A motion to disqualify shall be made within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling."). Having been procedurally barred in State court, this claim is procedurally defaulted.

<u>Claim 12 - Ineffective Assistance of Counsel - Failure to Call Witness</u>

In claim twelve, Guzman argues that counsel was ineffective for failing to call a Florida State Trooper as a witness alleging that the trooper would have cast doubt on the testimony of the two officers who rode with him and questioned him about the crime. He claims that the trooper, who was in the car as he was transported, would have testified that he never heard the officers read Guzman his Miranda rights. He contends that this testimony would have contradicted the testimony of the officers that he was given his Miranda rights in the car and that this would have cast doubt on the officers' credibility.

This claim was raised in the motion for post conviction relief and summarily denied. This claim was properly denied. Other than to say that the witness did not hear the officers provide Miranda warnings, Guzman does not proffer any other testimony that would have been presented. The claim is speculative as to what effect the trooper's testimony would have had on the jury's perception of the other officers' credibility. At the pretrial hearing on the motion to suppress the trial court reviewed the trooper's deposition and still found that Guzman's statement was voluntary and not obtained in violation of Miranda. Apparently the trial judge did not find

21

the deposition testimony to be sufficient to undermine the credibility of the two officers. At the hearing on the motion to suppress one of the officers testified that the trooper was in the front seat driving. The fact that he may not have heard the Miranda warnings does not necessarily impeach the credibility of the two officers who testified that the warnings were given. Thus Guzman has not established that it is more likely than not that the outcome of the proceedings would have been different and cannot meet the prejudice prong of <u>Strickland</u>.

Additionally, counsel's decision not to call the trooper can easily be seen as a proper tactical decision. Counsel had deposed the trooper and was aware of what he might testify about. Counsel was certainly aware that the trooper would have been subject to cross examination by the prosecutor. The fact that he was driving and conversing with the another officer in the front seat would have been brought out to show that the activity in the back seat did not have his undivided attention. If counsel had called this adverse witness he certainly faced a risk that the testimony would do more to hurt rather than help Guzman's case. The decision not to call the trooper is the type of tactical decision that is within the scope of reasonable representation and should not be judged with the benefit of hindsight. Guzman has therefore also failed to establish the deficient performance prong of <u>Strickland</u>.

<u>Claim 13 – Cumulative Effect of Alleged Erros</u>

In claim thirteen, Guzman argues that the cumulative effect of the alleged errors establish that he was denied due process.

This claim was raised in the motion for post conviction relief and summarily denied. The summary denial was proper as Guzman failed to sustain any of his claimed errors. Since none of the

22

alleged claims have been found to have merit, they cannot be amalgamated to amount to denial of a constitutional right. See United States v. Barshov, 733 F.2d 842, 852 (11th Cir.1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); see also United States v. Hall, 455 F.3d 508, 520 (5th Cir.2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir.2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir.2000); Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir.1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir.1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir.2007).

## Claim 14 - Trial Court Error - Denial of Cause Challenge to Potential Juror

In claim fourteen, Guzman argues that the trial court erred in denying a cause challenge to a potential juror who was the father of a police officer. He claims that he was forced to use his last peremptory challenge against this juror.

This claim was raised on direct appeal of Guzman's conviction. The claim was denied by the Third District. In its opinion the

appellate court relied on Florida law to deny the claim. Guzman never raised this issue as a federal constitutional issue and fails to present such an argument in the instant petition. Since he has failed to raise a constitutional question this claim is without merit.

Even if the instant claim could somehow be construed as federal constitutional question, it was not exhausted since it was not raised as such in state court. Furthermore, the Supreme Court has held that the denial of a challenge for cause does not result in a federal constitutional error. See Ross v. Oklahoma, 487 U.S. 81 (1988)(fact that defendant had to exercise a peremptory challenge to excuse a juror for whom a cause challenge was erroneously denied did not amount to constitutional error; peremptory challenges are a creature of statute and not required under the constitution). Thus the state court's ruling was not contrary to or an erroneous application of controlling precedent and this claim should be denied.

Claim 15 - Trial Court Error - Overruling Hearsay Objections to Victims Statements to Officers After Crime

In claim fifteen, Guzman argues that the trial court erred in permitting two police officers to testify about what the victim told them shortly after the crime. He claims that he was prejudiced by the admission of this testimony because it tended to corroborate the victim's testimony.

This claim was raised on direct appeal. The Third District did not expressly address this claim other than to state that it affirmed on this ground. In his appeal Guzman argued that trial court erred in finding that the statements were admissible under

24

the excited utterance exception to the hearsay rule. The claim as raised in state court relied exclusively on Florida law, there was no indication in Guzman's argument that he was raising a federal constitutional issue. In his petition before this court Guzman has not provided any argument that this is a federal constitutional question. Assuming that Guzman has presented a federal constitutional question in the instant petition it must be denied as unexhausted. Since exhaustion of this claim would now be futile the claim is also procedurally defaulted.

## Claim 16 - Trial Court Error - Denial of Continuance to Permit Testimony of Expert Testimony

In claim sixteen, Guzman argues that the trial court erred in denying a motion for continuance to allow him to call an expert witness. He claims that this expert would have impeached the testimony of the officers who took his confession. Guzman does not state with specificity what the witness would have said in his testimony.

This claim was raised on direct appeal. The Third District did not expressly address this claim other than to state that it affirmed on this ground. The claim, as raised in state court, relied exclusively on Florida law. There was no indication in Guzman's argument that he was raising a federal constitutional issue. In his petition before this court Guzman has not provided any argument that this is a federal constitutional question. Assuming that Guzman has presented a federal constitutional question in the instant petition it must be denied as unexhausted. Since exhaustion of this claim would now be futile the claim is also procedurally defaulted.

## Claim 17 - Due Process Violation - Prosecutor was not Duly

<u>Designated Assistant Legal Advisor to the Seventeenth Grand Jury</u>

In claim seventeen, Guzman argues that he was denied due process because one of the prosecutor's in his case was not duly sworn as an assistant state attorney. He contends that he was denied due process of law.

This claim was raised in Guzman's petition for habeas corpus in the state appellate court. Notwithstanding any other ground for denial of this claim, it is based on an erroneously premise. The record, as reflected in the filing of the state (DE# 47-2, p. 29-49), conclusively establishes that the Theresa Williams was a duly authorized assistant state attorney prior to, during and after Guzman's trial. The undersigned will give this claim no further consideration.

<u>Claim 18- Ineffective Assistance of Appellate Counsel - Failure to Raise Issue of Ineffective Assistance of Counsel</u>

In claim eighteen, Guzman appears to argue that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel for failing to file a motion for new trial. He argues that counsel should have raised this claim because the ineffectiveness was clear from the face of the record.

This claim was raised in Guzman's petition for habeas corpus filed in the state appellate court, and summarily denied. This claim was properly denied as it was without merit. Appellate counsel was not ineffective for failing to raise this claim because, as was addressed in claim one above, trial counsel was not ineffective in failing to move for new trial. <u>See Chandler v. Moore</u>, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise <u>non-meritorious</u> objection). Therefore Guzman cannot establish the prejudice prong of <u>Strickland</u>.

Additionally, claims of ineffective assistance of counsel are generally not to be raised on direct appeal in Florida. A motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 is the preferred vehicle for such claims. <u>Mendoza v. State</u>, 941 So.2d 523 (Fla. 3d DCA 2006). Thus appellate counsel's failure to raise this issue on direct appeal could not be deficient performance and Guzman is unable to establish the first prong of <u>Strickland</u>.

<u>Claim 19 - Post Conviction Trial Court Error - Summary Denial of Claim of Vindictive Sentence was Denial of Due Process</u>

In claim nineteen, Guzman argues that the trial court's denial of his claim of vindictive sentencing denied him due process in that it was in contravention to controlling law. He also seems to claim that appellate counsel was ineffective for failing to raise this issue on direct appeal, although he offers no argument in support of this contention.

This claim was presented in Guzman's petition for habeas corpus before the State appellate court and summarily denied. It was not, however, raised as a constitutional claim and did not allege ineffective assistance of appellate counsel. His failure to raise a claim of ineffective assistance of appellate counsel in the state court precludes review of that portion of the claim in that it is unexhausted. As to his claim that the trial court erred, the undersigned has addressed this claim above in claim two and found that it was properly found procedurally barred on independent state law grounds. Thus this claim is procedurally defaulted.

<u>Claim 20 - Trial Court and Appellate Court Errors - Denial of Due Process</u>

This claim is difficult to discern. It appears that Guzman is arguing that the State trial court and appellate court improperly

27

found some of his claims to be procedurally barred. It also appears that he is asserting a cumulative error argument.

This claim was to a certain extent presented in Guzman's petition for habeas corpus relief before the State appellate court. However, even in that petition this claim was unclear. To the extent that he argues that his claims were improperly denied by the state courts the undersigned references the discussion above regarding claims one through nineteen to show that the claims were all properly denied either on the merits or on adequate independent state law grounds.

To the extent that Guzman is arguing cumulative error, the undersigned references the discussion and citations above regarding claim 13. In short, if there is no individual error there can be no cumulative error.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 15th day of September, 2011.

UNITED STATES MAGISTRATE JUDGE

cc:  Norwin Guzman, Pro Se
     DC#L28293
     Santa Rosa Correctional Institution
     5850 E. Milton Road
     Milton, FL 32583

Jill D. Kramer, Asst. Attorney General
Office of the Attorney General
444 Brickell Avenue, Suite 650
Miami, FL 33131